UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MARK BENEDETTO, | ) | CIV. 12-4110-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANT'S |
| DELTA AIR LINES, INC., a | ) | MOTION TO DISMISS |
| Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, Delta Air Lines, Inc., moves the court to dismiss Mark Benedetto's complaint in its entirety. Docket 11. Benedetto alleges claims for negligence, breach of contract, breach of a duty of good faith and fair dealing, and punitive damages. Docket 1-1. Delta argues that Benedetto's claims for negligence and breach of a duty of good faith and fair dealing are preempted under the Airline Deregulation Act of 1978 (ADA), or alternatively, fail to state actionable claims. Delta also argues that Benedetto's claims for breach of contract and punitive damages fail to state claims upon which relief can be granted. Benedetto opposes the motion. For the following reasons, Delta's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The pertinent facts, according to the complaint (Docket 1-1), are as follows:

Mark Benedetto is a resident of South Dakota. Delta Air Lines, Inc. is a Delaware corporation and has its principal office in Atlanta, Georgia. Delta is authorized to and does transact business in South Dakota.

Benedetto and his wife, Gail Benedetto, purchased round trip tickets from Delta to travel from Sioux Falls Regional Airport in Sioux Falls, South Dakota to LaGuardia Airport in New York City, New York and then back to Sioux Falls. Benedetto's initial flight to New York from Sioux Falls took off on September 28, 2011. As required by Delta and the Transportation Security Administration (TSA), Benedetto declared to a Delta ticket agent during his check-in process that he was transporting a pistol in his checked luggage. Following the ticket agent's instructions, Benedetto placed a red tag into his luggage and was allowed to check in his pistol with his luggage. Delta offered no warning to Benedetto regarding New York's gun laws. Similarly, Delta did not disclose to Benedetto its policy that required ticket agents at LaGuardia Airport to report anyone with a firearm to the Port Authority of New York–New Jersey. Benedetto then boarded his plane and flew to New York.

On October 2, 2011, Benedetto arrived at LaGuardia Airport to catch his return flight to Sioux Falls. Benedetto again notified a Delta ticket agent that he was traveling with a pistol in his checked luggage. He was again given a red tag to place in his luggage, which he did. The Delta ticket agent then notified the Port Authority Police that there was a passenger who had declared a

firearm. Benedetto was arrested by the Port Authority Police for illegal possession of a firearm.[1] After this arrest, Benedetto was turned over to the New York City Police, transported to the Queens Boulevard Precinct, and jailed overnight. Benedetto was charged with a handgun violation and was required to return to New York for legal proceedings after his release.

Benedetto alleges that he was subjected to physical, emotional, and verbal abuse, reasonably feared for his safety, and suffered severe emotional distress while in police custody. He also alleges that he suffered an injury to his shoulder when a police officer handcuffed him.

Benedetto brought this action against Delta on May 24, 2012, in the Second Judicial Circuit of South Dakota. Subsequently, the suit was removed to this court.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to review the complaint as a whole to determine whether the plaintiff has stated a claim upon which relief can be granted. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). The facts alleged in the complaint must be considered true, and all inferences must be viewed in favor of the nonmoving party. *Strand v. Diversified Collection Serv., Inc.,* 380 F.3d 316, 317 (8th Cir. 2004). "[T]o survive a motion to dismiss, a complaint must

---

[1] Benedetto has a permit to carry a concealed weapon in South Dakota.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). "A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Braden,* 588 F.3d at 594 (quoting *Iqbal,* 556 U.S. at 678)).

## DISCUSSION

### I.   Negligence

Benedetto alleges in his negligence claim that Delta owed him a duty to warn him of New York's gun laws and to warn him of Delta's policy at LaGuardia that requires its ticket agents to notify Port Authority Policy when a passenger declares a firearm. Delta argues that Benedetto's negligence claim must be dismissed because it is preempted by the ADA.

The ADA was passed to promote "maximum reliance on competitive market forces" in order to "further efficiency, innovation, and low prices as well as variety and quality of air transportation services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (citation omitted). Included in the ADA is an express preemption clause that prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier[.]" 49 U.S.C. § 41713(b)(1). Congress's intent was to "ensure that the States would not undo

4

federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378.
The preemption clause is read "to mean 'States may not seek to impose their
own public policies or theories of competition or regulation on the operations
of an air carrier.' " *Botz v. Omni Air Int'l*, 286 F.3d 488, 494 (8th Cir. 2002)
(quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 299 n.5 (1995)). The laws
that are "forbidden" because of the preemption clause are those with a
"significant impact" on carrier prices, routes, or services. *Rowe v. New
Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 375 (2008) (citing *Morales*, 504
U.S. at 388, 390). Laws that affect prices, routes, or services in "too tenuous,
remote or peripheral a manner," however, are not preempted by the ADA. *Id.*
(citing *Morales*, 504 U.S. at 390).

    The Eighth Circuit Court of Appeals has analyzed the language found in
the preemption clause of the ADA on two separate occasions. In *Botz v. Omni
Air International*, 286 F.3d 488 (8th Cir. 2002), the court held that the ADA
preempted application of a Minnesota whistleblower statute. Because the
statute gave flight attendants the ability to refuse assignments, the court
determined that the statute had a "forbidden connection with air-carrier
services." *Id.* at 494. Although the statute only related to air-carrier services
"indirectly," it was Minnesota's attempt to impose its "own public policies or
regulatory theories on an air carrier's operations, an imposition that Congress
intended the ADA to pre-empt." *Id.* at 495.

5

In *Data Manufacturing, Inc. v. United Parcel Service, Inc.*, 557 F.3d 849 (8th Cir. 2009), the Eighth Circuit Court of Appeals held that the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501(c)(1) (FAAAA), preempted a plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, and money had and received. Before delving into its preemption analysis, the court noted that the FAAAA preemption language "reads very much like" the preemption language found in the ADA. *Id.* at 853. The court noted that because of the nearly identical language, "the preemption clauses in the ADA and FAAAA are identical in scope."[2] *Id.* at 853 n.2 (citing *Rowe*, 552 U.S. at 370).

The Eighth Circuit applied a two-part test in determining that the FAAAA preempted the plaintiff's claims. The court specified that the claims were preempted if they (1) related to a price, route, or service of a carrier, and (2) derived from the enactment or enforcement of state law. *Id.* at 852. After noting that the Supreme Court has "broadly interpreted the phrase 'relating to' as encompassing all state laws having any connection with or reference to the carrier's rates, routes, or services," the court concluded that a carrier's $10 billing charge was part of the carrier's "operations" and thus related to the carrier's prices and services. *Id.* ("While the work to re-bill may have been de

---

[2] Treating the preemption clauses in an identical fashion is bolstered by the appellate court's reliance on *Morales* and *Wolens* in its analysis of the FAAAA.

6

minimus, it was still part of the UPS accounting department's operations to do so."). Turning to the second part of the test, the court concluded that all of the plaintiff's claims, with the exception of the contract claim, derived from the enforcement of state law. *Id.* at 853. The plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, and money had and received "all depended upon and are associated with the state of Missouri, through its common law, guiding and policing UPS's economic policies." *Id.* The court noted that the claims "arise outside of the four corners of the contract between UPS and DMI, and are claims that are enlarged or enhanced, and indeed, are dependent upon, Missouri state laws and polices. Accordingly, these claims are preempted." *Id.*

The Eighth Circuit next analyzed the plaintiff's contract claim to determine if it was preempted. The contract claim alleged that the plaintiff "did not agree to pay the fee, and it was a penalty, unlawful, and void as against public policy." *Id.* at 854. The court asserted that the "determination of whether such a fee is a penalty, unlawful and against Missouri's public policy, by definition, requires the court to apply Missouri law." *Id.* Therefore, the part of the contract claim that alleged that the fee was a penalty, unlawful, and void as against public policy was preempted.[3] *Id.* The only claim that was not

---

[3] The court noted that the plaintiff "cannot argue that the fee is too unconscionably high, a penalty, or void, but it can proceed with its claim that it did not agree to the fee at all." *Data Mfg., Inc.*, 557 F.3d at 854 n.3.

preempted was the plaintiff's contract claim, which alleged that the plaintiff did not agree to pay the fee. *Id.*

In accordance with United States Supreme Court and Eighth Circuit precedent, the court must determine whether Benedetto's negligence claim is related to a price, route, or service of Delta. The negligence claim is "related to" if it has any connection with or reference to Delta's rates, routes, or services. *Id.* at 852 (citing *Morales*, 504 U.S. at 383-84). Benedetto alleges that "Delta owed its passengers a duty to warn him of dangerous conditions of which he would not otherwise reasonably be aware;" "Delta breached its duty . . . to warn of the restrictive firearms laws in the State of New York;" and "Delta breached its duty . . . to warn Benedetto of its own policy that required that he be reported to the Port Authority Police[.]" Docket 1-1 at ¶¶ 20, 22-23. Put simply, Benedetto complains about the services that Delta offers. First, as part of the services that Delta offers, Benedetto argues that Delta should warn its passengers of the gun laws of destination states. Second, as part of the services it offers, Benedetto argues that Delta should either not notify Port Authority Police that a passenger has declared a firearm or warn passengers that it is going to do so. Benedetto's negligence claim is entirely centered on the services that Delta offers. Thus, the first element of the preemption test is satisfied.

Next, the court must determine whether Benedetto's negligence claim derives from the enactment or enforcement of state law. A claim derives from the enactment or enforcement of state law if it "serves as a means to guide and police the . . . practices of the airlines rather than simply giving effect to bargains offered by the airlines and accepted by airline customers." *Data Mfg., Inc.*, 557 F.3d at 853 (citing *Wolens*, 513 U.S. at 228). Consistent with United States Supreme Court and Eighth Circuit precedent, the court concludes that Benedetto's negligence claim depends upon and is associated with state common law. The ADA precludes "states from 'imposing their own public policies or theories of competition or regulation on the operations' of a carrier." *Id.* (quoting *Wolens*, 513 U.S. at 229 n.5). If Benedetto's negligence claim is allowed to proceed, state negligence law would inevitably guide and police the services that Delta and all other airlines offer. Through its negligence law, states would regulate what airlines must warn of and how airlines handle passengers traveling with firearms. Such guiding and policing of the airline industry by states is precluded under the ADA, and thus, Benedetto's negligence claim is preempted.[4]

---

[4] The court's holding is limited to the specific negligence claim pleaded by Benedetto. The court is not proffering any opinion with respect to "negligence" claims in general.

9

II.   **Breach of Contract and Breach of Duty of Good Faith and Fair Dealing**

   A.  **Breach of Contract**

Because the parties agree that the ADA does not preempt Benedetto's breach of contract claim, the court must first address the inescapable choice of law question before examining the breach of contract claim. A federal district court sitting in diversity applies the choice of law rules of the state in which it sits. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). The court, however, must first determine whether a conflict exists before applying a state's choice of law rules. *Id.* The court concludes that the outcome here would be the same under both South Dakota and New York law, and therefore, no conflict exists. And neither party has argued differently.

Delta argues that Benedetto's contract claim fails to state a claim because it fails to adequately allege the terms of a contract. To establish breach of contract under South Dakota law, a plaintiff must show (1) an enforceable promise, (2) breach of the promise, and (3) resulting damages. *Weitzel v. Sioux Valley Heart Partners*, 714 N.W.2d 884, 894 (S.D. 2006). To establish breach of contract under New York law, a plaintiff must show (1) the existence of a contract, (2) plaintiff's performance under the contract, (3) defendant's breach of that contract, and (4) resulting damages. *JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 893 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010). Benedetto alleges in his complaint that "Delta agreed to transport

10

Benedetto from LaGuardia Airport to Sioux Falls, South Dakota on October 2, 2012." Docket 1-1 ¶ 30. The complaint also asserts that "Delta failed to transport Benedetto from LaGuardia Airport to Sioux Falls, South Dakota on October 2, 2012," and Delta "breached its contractual obligation" because of this failure. *Id.* at ¶ 31, 33. Benedetto further alleges that he "purchased round trip tickets from Delta to travel from Sioux Falls Regional Airport in Sioux Falls, South Dakota to La Guardia Airport in New York City, New York and back." *Id.* at ¶ 3. These factual assertions, taken as true, are enough to establish that there existed a contract (or enforceable promise), that Benedetto performed under the contract, and that Delta breached the contract.

Furthermore, Benedetto has alleged various damages that he claims were a direct result of Delta's breach. Under South Dakota law, a plaintiff in a breach of contract action is entitled to recover "all his detriment proximately caused by the breach, not exceeding the amount he would have gained by full performance." *Bad Wound v. Lakota Cmty. Homes, Inc.*, 603 N.W.2d 723, 725 (S.D. 1999). Under New York law, a plaintiff is entitled to recover "consequential contract damages which are the natural and probable consequence of the breach." *Reads Co., LLC v. Katz*, 900 N.Y.S.2d 131, 133 (N.Y. App. Div. 2010). Due to the nature of a Rule 12(b)(6) motion and the factual constraints that go with it, the court cannot determine at this time whether the alleged damages were "proximately caused by the breach" or "the

natural and probable consequence" of the alleged breach. Benedetto need only allege damages resulted from the breach to overcome Delta's Rule 12(b)(6) motion to dismiss; he need not legally prove them. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997). Although it may be difficult for Benedetto to prevail on some of his alleged damages, his complaint will not be dismissed "merely because the court doubts that [he] will be able to prove all of the necessary factual allegations." *Id.* Thus, the court concludes that Benedetto adequately pleaded a claim for breach of contract.

Delta also argues that Benedetto's breach of contract claim is barred by the doctrine of impossibility. Under South Dakota law, the doctrine of impossibility, also referred to as commercial frustration, "requires proof of three elements: (1) the purpose that is frustrated must have been a principle purpose of that party in making the contract; (2) the frustration must be substantial; and (3) the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." *Mueller v. Cedar Shore Resort, Inc.,* 643 N.W.2d 56, 69 (S.D. 2002). Under New York law, the "law of impossibility provides that performance of a contract will be excused if such performance is rendered impossible by intervening governmental activities, but only if those activities are unforeseeable." *A & S Transp. Co. v. County of Nassau*, 546 N.Y.S.2d 109, 109 (N.Y. App. Div. 1989). Because this is a Rule 12(b)(6) motion to dismiss, the court is again unable to make a legal

12

determination at this time. The court cannot conclude, without additional facts, whether Benedetto's arrest was either "a basic assumption on which the contract was made" or "foreseeable." Thus, Delta may not use the doctrine of impossibility to defeat Benedetto's breach of contract claim at this stage of the litigation with the facts as pleaded.

### B.  Breach of Duty of Good Faith and Fair Dealing

Delta argues that Benedetto's claim for breach of duty of good faith and fair dealing is preempted by the ADA. Benedetto responds by claiming that his duty of good faith claim is not a separate tort action but part of his breach of contract claim. Because the duty of good faith claim is part of his contract claim, Benedetto argues that it is not preempted under the *Wolens* analysis. *See Wolens*, 513 U.S. at 228-33 (holding that some contract claims are not preempted because there is "no enlargement or enhancement based on state laws or policies external to the agreement"); *but see Wolens*, 513 U.S. at 233 n.8 (supporting the proposition that some state law principles of contract law "might well be preempted to the extent they seek to effectuate the State's public policies, rather than the intent of the parties").

In *Data Manufacturing*, the Eighth Circuit held that claims that "arise outside of the four corners of the contract" and that are enlarged, enhanced and dependent upon state laws and policies are preempted by the ADA. 557 F.3d at 853. The court found that the parts of the plaintiff's breach of contract

cause of action that alleged the contract created a penalty, was unlawful, and was against public policy were all preempted because they required application of state law. *Id.* at 854 ("The determination of whether such a fee is a penalty, unlawful and against Missouri's public policy, by definition, requires the court to apply Missouri law."). Because these claims required application of state law, the court found they derived from the enactment or enforcement of state law in violation of the ADA's preemption clause. *See id.* at 854 n.3 ("[Plaintiff] cannot argue that the fee is too unconscionably high, a penalty, or void, but it can proceed with its claim that it did not agree to the fee at all."). Similar reasoning applies here. As the basis for his duty of good faith claim, Benedetto alleges that "[n]o reasonable basis exists for Delta's failure to fulfill its contractual obligations, . . . and Delta knew or should have known that no reasonabl[e] basis exists for its failure[.]" Docket 1-1 at ¶ 41. Determining whether a "reasonable basis exists" or whether "Delta knew or should have known that no reasonable basis exists" will certainly require application of state law.[5] The claim is enlarged and enhanced based on state laws and policies external to the parties' agreement. *See Wolens*, 513 U.S. at

---

[5] Benedetto's brief implicitly recognizes that a good faith claim will require application of state law in such a manner to incorporate state public policies by noting that a "majority of American jurisdictions - including South Dakota - recognize a duty to perform a contract in good faith." Docket 15 at 30. If a "majority" of jurisdictions recognize such a claim, then a minority of jurisdictions do not. Naturally, it is a state's public policy determination that determines whether the claim is recognized.

233 ("This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."). Accordingly, Benedetto's claim for breach of duty of good faith and fair dealing is preempted under the ADA, regardless of whether it takes the form of a tort or contract claim.

## III.  Punitive Damages

Lastly, Delta argues that Benedetto's claim for punitive damages lacks merit. As Benedetto correctly notes, however, punitive damages are a form of relief and not a "claim" that is subject to a Rule 12(b)(6) motion to dismiss. *See Security Nat'l Bank of Sioux City, Iowa v. Abbott Laboratories*, Civ. No. 11-4017, 2012 WL 327863, at *21 (N.D. Iowa Feb. 1, 2012) ("[P]unitive damages are not a cause of action, and as such, so long as there are surviving claims, they are not subject to a motion to dismiss."). Thus, the court will not address the issue of punitive damages at this time.

### CONCLUSION

Benedetto's claims for negligence and breach of duty of good faith and fair dealing are preempted by the ADA. Separately, Benedetto properly pleaded the elements of his contract claim to put Delta on notice of his claim. Lastly, punitive damages are not a cause of action and thus are not considered under a motion to dismiss. Accordingly, it is

ORDERED that defendant's motion to dismiss plaintiff's claims for negligence and breach of duty of good faith and fair dealing (Docket 11) is granted.

IT IS FURTHER ORDERED that defendant's motion to dismiss plaintiff's claim for breach of contract (Docket 11) is denied.

Dated January 7, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

16